IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ECOSHIELD PEST SOLUTIONS
PORTLAND, LLC,

          Plaintiff,

   v.

GRIT MARKETING, LLC; ZACHARY
SEAGER; and CORBIN HANSEN,

          Defendants.

No. 3:24-cv-00887-HZ

OPINION & ORDER

Kelsie Gene Crippen
Lauren F. Blaesing
Markowitz Herbold PC
1455 SW Broadway, Ste 1900
Portland, OR 97201

   Attorneys for Plaintiff

1 – OPINION & ORDER

Case 3:24-cv-00887-HZ   Document 11   Filed 06/05/24   Page 2 of 14

HERNÁNDEZ, District Judge:

Plaintiff EcoShield Pest Solutions Portland, LLC, moves for a temporary restraining order ("TRO") enjoining Defendants Grit Marketing, LLC, Zachary Seager, and Corbin Hansen from engaging in certain aggressive and anticompetitive sales tactics in the Portland market of door-to-door pest control sales. Pl. Mot., ECF 4. For the following reasons, the Court grants the Motion in part and denies it in part.

## BACKGROUND

Plaintiff and its affiliates provide extermination and pest-control services for homes and businesses, using door-to-door salespeople to generate business. Compl. ¶ 1, ECF 1. Defendant Grit provides door-to-door sales services on behalf of pest-control companies. *Id.* ¶¶ 2-4. It is a Utah limited liability company. *Id.* ¶ 27. Defendant Seager is a regional manager of Defendant Grit, and Defendant Hansen is a sales representative for Defendant Grit and a member of Defendant Seager's team. *Id.* ¶¶ 5, 7. Both are domiciled in Utah. *Id.* ¶¶ 28-29. Plaintiff alleges that Defendant Grit, through its salespeople, has engaged in unlawful and anti-competitive sales practices to force Plaintiff out of the Portland market. *Id.* ¶ 9.

Plaintiff alleges that Defendant Grit has engaged in the following practices: (1) following Plaintiff's salespeople from door to door and actively interfering with their sales efforts by interrupting conversations with prospective customers; (2) lying to customers about Plaintiff and its services; (3) paying customers' cancellation fees as part of an effort to switch their accounts to Defendant Grit's clients; (4) engaging in bad-faith price discrimination; (5) stalking one of Plaintiff's female salespeople; (6) stalking and using homophobic language toward one of Plaintiff's salespeople; and (7) physically assaulting and battering one of Plaintiff's salespeople. *Id.* ¶ 17. In support of its Motion for a TRO, Plaintiff submits declarations from its salespeople

and videos of Defendant Grit's salespeople that corroborate these allegations. Burningham Decl., ECF 5; Walton Decl., ECF 6. This evidence is addressed in more detail in assessing the merits of Plaintiff's claims.

Plaintiff alleges that Defendants and their salespeople have admitted on camera that they have "kicked out" other pest-control companies from the Portland market, intend to do the same to Plaintiff, and are training their salespeople to engage in the above-listed sales tactics. *Id.* ¶ 18. Plaintiff submits evidence supporting these allegations. Plaintiff states that the bulk of business in door-to-door pest-control services is done between April and August of each year, making the current time of year critical for business. *Id.* ¶¶ 19-22. Plaintiff submits evidence supporting these allegations.

Plaintiff filed its Complaint on May 31, 2024. Plaintiff brings the following claims against Defendants: (1) tortious interference with economic relations; (2) price discrimination under O.R.S. 646.040; (3) special payments to customers under O.R.S. 646.070; (4) inducing price discrimination under O.R.S. 646.090; (5) monopolization under O.R.S. 646.730 and 646.780; and (6) monopolization of trade under 15 U.S.C. §§ 2, 15.

On June 3, 2024, Plaintiff filed its Motion for a TRO. In the Motion, Plaintiff certifies that it contacted counsel for Defendant Grit to advise that it would be seeking a TRO. Pl. Mot. 1. Plaintiff seeks a TRO enjoining Defendants from "(i) stalking, harassing, assaulting, battering, or otherwise attempting to intentionally interfere with Plaintiff's door-to-door salespeople ('Direct Sellers') in Oregon; and/or (ii) engaging in anti-competitive behavior and unlawful price discrimination[.]" *Id.*

//

//

3 – OPINION & ORDER

## STANDARDS

"The legal standard for a TRO is substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). A TRO, like a preliminary injunction, is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a temporary restraining order must show (1) that it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a TRO where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in the plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a TRO must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## DISCUSSION

The Court concludes that Plaintiff is likely to succeed on the merits of its claims, but that it has only shown that it is likely to suffer irreparable harm as to some of the conduct alleged. The balance of the equities and the public interest both favor the issuance of a TRO. Therefore, the Court will enter a TRO more limited in scope than what Plaintiff requests.

I.  **Likelihood of Success on the Merits**

   A.  Tortious Interference with Economic Relations

Plaintiff is likely to succeed on this claim. The claim requires Plaintiff to prove:

(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995).

Plaintiff is likely to prove all of these elements. First, Plaintiff has had contracts or prospective economic relationships with many customers in the Portland market. Pl. Mot. 8 (citing Burningham Decl. ¶¶ 3-6, 9-10). Second, Defendants interfered with those relationships by following Plaintiff's salespeople and attempting to "flip" customers from Plaintiff's company to the company Defendant Grit represents. Burningham Decl. Ex. B (video and audio recordings in which salespeople for Defendant Grit admit to this conduct). Third, Defendants (and the pest-control company they represent) are a third party with respect to actual or prospective relationships between Portland residents and Plaintiff. Fourth, Plaintiff is likely to be able to prove that Defendants interfered with these relationships through improper means or for an improper purpose. As Plaintiff states, these improper means include assault and battery, stalking or intimidation, defamation, and anti-competitive conduct such as predatory pricing and special payments to customers. Pl. Mot. 9. Declarations from Plaintiff's salespeople who experienced or witnessed this conduct corroborate the allegations in the Complaint. Burningham Decl. ¶¶ 6-8, 11; Patterson Decl. ¶¶ 5-8, 12-14; Montoya Decl. ¶¶ 7, 13-17, 19-29; Johnson Decl. ¶¶ 3-32; Walton Decl. ¶¶ 6-14. Plaintiff also submits video evidence showing Defendant's salespeople following Plaintiff's salespeople and stating that they will do so. Burningham Decl. Ex. B.

5 – OPINION & ORDER

Alternatively, Plaintiff is likely to prove that Defendants acted with the improper purpose of forcing Plaintiff out of the Portland market in order to monopolize the market. Pl. Mot. 10. Declarations from Plaintiff's salespeople support finding that Defendant Grit had this improper purpose. Burningham Decl. ¶¶ 6-8; Patterson Decl. ¶¶ 5-8; Montoya Decl. ¶¶ 7, 13-24; Walton Decl. ¶¶ 6-9. Plaintiff submitted video evidence of Defendant's salespeople admitting to this purpose. Burningham Decl. Ex. B. Fifth, Plaintiff is likely to be able to show that Defendants' interference caused damages including the cancellation of existing contracts and loss of future business. Pl. Mot. 10; Burningham Decl. ¶¶ 5-11; Montoya Decl. ¶¶ 19-23; Walton Decl. ¶¶ 11-14. Sixth, Plaintiff is likely to be able to prove these damages. Pl. Mot. 10; Burningham Decl. ¶¶ 6-8, 11, 14. In sum, Plaintiff is likely to succeed on its claim for tortious interference with economic relations.

      B.      Price Discrimination Claims

Plaintiff is also likely to succeed on its price discrimination claims. O.R.S. 646.040 states:

> It is unlawful for any person engaged in commerce . . . in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities, or services or output of a service trade, of like grade and quality or to discriminate in price between different sections, communities or cities or portions thereof or between different locations in sections, communities, cities or portions thereof in this state, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

And "[n]o person engaged in commerce . . . in the course of such commerce, shall knowingly induce or receive a discrimination in price which is prohibited by ORS 646.040[.]" O.R.S. 646.090.

6 – OPINION & ORDER

Defendant Grit, though its salespeople, has admitted to discriminating in price between residential consumers of pest-control services by "go[ing] negative" on certain accounts in order to lure those customers away from Plaintiff and create a monopoly. Pl. Mot. 11-12; Burningham Decl. Ex. B (video of salesperson for Defendant Grit dated May 10, 2024, in which he states he would "go negative" in order to flip accounts); Patterson Decl. ¶ 5 (stating that Defendant Seager told him he would "go negative" on an account). Plaintiff is therefore likely to succeed on its price discrimination claims, or at least has raised serious questions on the merits.

C. Special Payment Claims

Plaintiff is likely to succeed on its claim that Defendant Grit made special payments to customers. Oregon law provides:

> No person engaged in commerce . . . in the course of such commerce, shall pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale or offering for sale of any products or commodities manufactured, service or output of a service trade, sold or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities, or service, or output of service trades.

O.R.S. 646.070.

As Plaintiff states, Defendant Grit has, through its salespeople, admitted to paying customers' cancellation fees for terminating their contracts with Plaintiff and other pest-control companies. Pl. Mot. 13; Burningham Decl. ¶¶ 6-8, 12-14; Patterson Decl. ¶¶ 5, 7, 8; Montoya Decl. ¶¶ 7, 13; Walton Decl. ¶¶ 6-9; Burningham Decl. Ex. B. Plaintiff is likely to succeed in its argument that these payments, although made to residential customers, were for the benefit of Defendant Grit's client (the pest-control company whose services Defendant Grit was selling) in consideration for use of Defendants' services. Pl. Mot. 13. Several of Defendants' salespeople

7 – OPINION & ORDER

were recorded stating that their sales tactics had resulted in large revenues for their client, Axiom, and that they had made a lot of money working for Defendant Grit. Burningham Decl. Ex. B. Plaintiff is likely to prevail on this claim, or at minimum has raised serious questions on the merits.

D.     Monopoly Claims

Plaintiff brings claims under both federal law (the Sherman Antitrust Act) and Oregon law for monopolizing or attempting to monopolize trade. Because there are no Oregon cases interpreting the Oregon antitrust statute, and Oregon courts look to federal cases for guidance, the same standard applies to both claims. *See Willamette Dental Group, P.C. v. Or. Dental Serv. Corp.*, 130 Or. App. 487, 492, 882 P.2d 637 (1994) (looking to federal antitrust law to interpret Oregon antitrust law).

To prove monopolization, Plaintiff must prove: (1) Defendant Grit possesses monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). To prove attempted monopolization, Plaintiff must prove: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury. *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992).

Plaintiff has at least raised serious questions on the merits of a monopolization claim. Defendant Grit's sales representatives made statements on camera that support finding the existence of monopoly power. Burningham Decl. Ex. B. Several of Defendant Grit's sales representatives also told Plaintiff's sales representatives on camera that Defendant Grit was attempting to kick all other pest-control companies out of the Portland market. One of them

named three companies that he stated Defendant Grit had already "kicked out." *Id.* (video of Grit representative Dawson taken May 15, 2024). As to injury, Plaintiff correctly states that coercive activity preventing its victims from making a free choice between market alternatives is a form of antitrust injury. Pl. Mot. 14 (citing *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003)). Defendant Grit's activities appear likely to result in a restriction on consumers' free choice of pest-control services in the Portland market.

Plaintiff has raised serious questions on the merits of its attempted monopolization claim. Several of Defendant's salespeople stated on camera that Defendant Grit wanted to (and had) forced other pest-control companies out of the Portland market with the goal of controlling the market. As stated above, they admitted to "going negative" on accounts and paying cancellation fees for customers to get the deal. They have already forced other pest-control companies out of the market, indicating a dangerous probability of success. And as stated above, preventing victims from making a free choice between market alternatives is a form of causal injury.

## II.     Irreparable Harm

"Irreparable harm can be difficult to define, but it is often marked by an inability to be adequately remedied by money damages." *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 538 F. Supp. 3d 1132, 1145 (D. Or. 2021). For example, in the context of trade secret cases, irreparable harm may include unfair competition; loss of market share; and damage to reputation, goodwill, or customer relationships. *Id.* at 1145-46. "The threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). However, evidence of large losses to a business is not. *Id.*

Plaintiff acknowledges that harm from loss of existing customers is calculable and can be remedied with damages. Pl. Mot. 16. Plaintiff argues that its irreparable harm includes (1) physical and psychological harm to its employees, (2) loss of salespeople due to Defendants' behavior, and (3) loss of goodwill, prospective customer relationships, and market share. *Id.* at 16-17. Plaintiff notes that it is currently peak season for selling pest-control services. *Id.* at 17.

Plaintiff has not convinced the Court that its loss of prospective customers constitutes irreparable harm in this situation. Plaintiff alleges, and submits evidence showing, that some of Defendant Grit's salespeople made defamatory statements about Plaintiff's services to individual customers. Plaintiff has not alleged that Defendant Grit engaged in broader, less directed efforts to defame Plaintiff in Portland generally. Further, the videos Plaintiff submitted show that both Plaintiff's salespeople and Defendants' salespeople have neighborhoods in which they direct their efforts. Burningham Decl. Ex. B. It appears to the Court that damages are likely to be sufficient to remedy Plaintiff's loss of prospective business and that those damages will be reasonably calculable. Plaintiff has not submitted evidence showing a general loss of goodwill toward it based on Defendant Grit's conduct. Nor has Plaintiff shown that loss of salespeople constitutes irreparable injury.

The Court is concerned by the evidence that Defendant Grit's salespeople have assaulted and battered Plaintiff's salespeople. Kyle Patterson, one of Plaintiff's salespeople, states that after he knocked on a customer's door, one of Defendant Grit's salespeople "aggressively approached and stepped in front of me when the customer answered the door. To do so, he swung his leg around my leg, touching me without permission, and physically preventing me from speaking to the customer." Patterson Decl. ¶ 14. Patterson also states that this salesperson was directed by Defendant Seager to engage in aggressive sales tactics. *Id.* ¶ 13. Brayden

Montoya, another one of Plaintiff's salespeople, states that Arthur Bauer, one of Defendant Grit's salespeople, "aggressively pushed by me and physically moved me out of the way while we were on [a] smaller front porch so that he could sell to the potential customer instead of me." Montoya Decl. ¶ 16. Another one of Plaintiff's salespeople, Lacey Brooke Johnson, states that a sales representative for Defendant Grit followed her while she was making sales, and when she took a break from selling to use the restroom, she found him in the park waiting for her, and he continued to follow her when she left the park. Johnson Decl. ¶¶ 10-13.

In the videos Plaintiff submitted, several of Defendant Grit's sales representatives stated that they were trained to follow salespeople from other pest-control companies, and even to go on the porch with them and interfere with sales. Burningham Decl. Ex. B. The videos also establish that Defendant Seager, who holds a leadership position, trained at least some of the salespeople who made these statements. In short, the record shows that Defendant Grit trained its salespeople to use aggressive sales tactics that are reasonably likely to result in battery, and that battery occurred on at least two occasions.

Under these circumstances, the Court concludes that Plaintiff has shown that it is likely to suffer irreparable harm without a TRO. It is likely that Plaintiff's salespeople will be subjected to assault and battery as part of Defendant Grit's aggressive sales tactics, as has already occurred at least twice. A risk of physical injury can constitute irreparable harm. *E.g.*, *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *11 (C.D. Cal. Oct. 17, 2019). While the record suggests that any physical injuries were minor, that does not weigh heavily against a finding of irreparable harm. No level of battery is acceptable in this situation. It is not appropriate to allow a real threat of physical injury to go unaddressed while this case progresses. Plaintiff has made a showing of irreparable harm for some of its claimed

11 – OPINION & ORDER

injuries, but that showing is not strong enough that serious questions on the merits of any of its claims would justify a TRO. Because Plaintiff has shown a likelihood of success at least on its claim for tortious interference with economic relations, the Court proceeds with the analysis.

### III.  Balance of the Equities

The balance of the equities favors Plaintiff. In balancing the equities, courts may consider several factors, including whether any burdens are self-inflicted, how the TRO or injunction would affect the parties financially, whether the TRO or injunction is mandatory, and the duration of the harm to the parties. *Easterday Dairy, LLC v. Fall Line Cap., LLC*, No. 2:22-CV-01000-HL, 2022 WL 17104572, at *5 (D. Or. Nov. 22, 2022).

Here, a TRO would be prohibitive rather than mandatory, which favors Plaintiff. Plaintiff asserts that a TRO "would not prevent Defendants or their team members from lawfully conducting their business and would not impose any appreciable hardship on anyone." Pl. Mot. 18. To the extent the TRO impacts Defendants' business model, that burden is largely self-inflicted because Defendants have chosen to conduct business in a manner that Plaintiff is likely to prove is unlawful. And because the parties are in the midst of the busiest time of year for the pest-control industry, it is particularly important to enjoin unlawful conduct now. This factor favors entry of a TRO.

### IV.  Public Interest

The public interest favors Plaintiff. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the reach of a TRO is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be a neutral factor. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). But if

the effect of a TRO reaches beyond the parties, the public interest will be relevant to whether the district court grants the TRO. *Id.*

Any TRO entered would only directly affect Defendant Grit and agents acting on its behalf. To the extent there are secondary effects on non-parties, the public interest favors Plaintiff. There is a public interest in promoting fair competition and in preventing conduct such as assault and battery, particularly when the two instances of battery have occurred on front porches, i.e., in close proximity to members of the public. This factor favors entry of a TRO.

**V.     Scope of TRO**

The *Winter* factors favor entry of a TRO, but not with all of the terms Plaintiff proposes. *See* Pl. Mot. 19-20. As the Court has discussed, Plaintiff has not shown that its economic harms are irreparable. While it may be able to do so on a larger record, it has not at this time. The Court is, however, convinced that it is necessary to temporarily restrain Defendant Grit's salespeople from engaging in conduct that constitutes assault and battery or presents a reasonable risk of assault and battery. Plaintiff asks the Court to restrict Defendants, their officers, employees, agents, servants, attorneys, and those in active concert with those persons from "coming within 50 feet of any EcoShield office, EcoShield-branded truck, or persons wearing EcoShield-branded clothing." *Id.* at 20. This requested relief is granted in part. The Court concludes it is necessary to enjoin Defendant Grit, when acting through its sales representatives, from coming within 50 feet of any persons wearing EcoShield-branded clothing. Plaintiff has not shown that Defendant's salespeople approached EcoShield offices or trucks to engage in any unlawful behavior, or that they are likely to do so in the future. The Court will revisit the other relief Plaintiff requested in a hearing for a preliminary injunction on a more developed record.

Finally, Plaintiff asks the court to waive the security requirement of Rule 65(c), but states that it is prepared to provide security if required. Pl. Mot. 6. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotations omitted). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (quotation marks and brackets omitted). The Court concludes that Plaintiff should not be required to pay a security because the TRO the Court will enter is narrow and is not likely to harm Defendants.

## CONCLUSION

Plaintiff's Motion for Temporary Restraining Order [4] is GRANTED IN PART. Defendant Grit Marketing, LLC, when acting by and through its sales representatives, is temporarily restrained from coming within 50 feet of any persons wearing EcoShield-branded clothing. This Order expires after 14 days. Plaintiff is not required to give security under Federal Rule of Civil Procedure 65(c).

IT IS SO ORDERED.

DATED:_____June 5, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge